UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YACEL LEONARDO RAMOS (A-074-287-032), | No. 1:26-cv-04670-TLN-CSK |
| Petitioner, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner Yacel Leonardo Ramos (A-074-287-032), a native and citizen of Cuba who is proceeding with counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  On or about August 22, 1995, petitioner entered the United States.  On or about April 16, 1996, petitioner became a Lawful Permanent Resident.  On August 14, 2012, an immigration judge ordered him removed.  Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") officials following his removal order and later released under an Order of Supervision on or about August 17, 2015.  On January 16, 2026, ICE officials re-detained petitioner.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted.

///

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.     FACTUAL BACKGROUND

On or about August 22, 1995, petitioner entered the United States.  (ECF No. 8-1 at 6.)  On or about April 16, 1996, petitioner became a Lawful Permanent Resident.  (Id.)  On August 14, 2012, an immigration judge ordered him removed.[2]  (Id. at 45.)  Petitioner was detained by ICE officials following his removal order and later released and placed on an Order of Supervision on or about August 17, 2015.  (Id. at 7.)

On January 16, 2026, ICE officials re-detained petitioner.  (Id. at 6.)  Immigration officials served petitioner with a notice of revocation of release which indicated: (1) the purposes of release have been served; (2) petitioner violated a condition of release because he failed to report as required; and (3) revocation is appropriate to enforce his removal order.  (Id. at 48.)  On January 21, 2026, immigration officials served petitioner with a notice of removal to Mexico because petitioner is not on Cuba's repatriation list.  (Id. at 2, 53.)  On May 4, 2026, an ICE official conducted an informal interview with petitioner affording him an opportunity to respond to the reasons for the revocation of his Order of Supervision.  (Id. at 50.)

## II.    PROCEDURAL BACKGROUND

On June 17, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  On July 6, 2026, respondents timely filed an answer to the petition.  (ECF No. 8.)  On July 9, 2026, petitioner filed a traverse.  (ECF No. 10.)  On July 26, 2026, petitioner filed a notice of ripeness and motion to expedite ruling.  (ECF No. 11.)  Briefing is now complete.

## III.   LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

---

[2]  Petitioner's criminal history is not at issue in this petition so it is not addressed here though respondents submitted his rap sheet.  (See ECF Nos. 1, 8.)

Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.   DISCUSSION

Petitioner challenges his continued detention based on the following: (1) his prolonged detention violates the Fifth Amendment Due Process Clause and substantive and procedural due process; (2) his detention is unlawful because ICE failed to demonstrate a significant likelihood of removal; (3) the revocation of his Order of Supervision and arbitrary re-detention is unlawful; (4) ICE failed to consider less restrictive alternatives to detention; (5) his detention has become punitive in violation of Fifth Amendment; and (6) ICE violated the Administrative Procedure Act by failing to follow its own regulations in revoking his Order of Supervision.  (ECF No. 1 at 6-11.)

Respondents acknowledge petitioner is subject to detention under 8 U.S.C. § 1231 based on his final order of removal.  (ECF No. 8 at 3.)  Respondents further claim that the removal period is extended by petitioner's refusal to cooperate, making detention mandatory pursuant to 8 U.S.C. § 1231(a)(1)(C).  (Id. at 2-3.)  Respondents also argue petitioner has failed to exhaust administrative remedies as to his fear of removal to Mexico.  (Id. at 4.)

### A.   Detention Authority & Due Process Claims

The parties agree that petitioner is subject to a final order of removal.  (ECF No. 8-1 at 45.)  Here, it is clear the 90-day removal period has long passed where petitioner was ordered removed on August 14, 2012, and the record indicates he waived appeal.  (Id.)  It is also undisputed that petitioner was most recently released under an Order of Supervision on or about August 17, 2015.  (Id. at 6.)  Accordingly, the Court finds petitioner is subject to detention under 8 U.S.C. § 1231(a)(6).

Respondents argue that petitioner's failure to consent to his third country removal to Mexico restarts the mandatory 90-day period of post-removal detention pursuant to 8 U.S.C.

3

§ 1231(a)(1)(C).  (ECF No. 8 at 2-3.)  DHS regulations allow the government to extend the removal period "if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal."  8 C.F.R. § 241.4(g)(1)(ii).  To do so, the government must issue a "Notice of Failure to Comply" prior to the expiration of the removal period.  Id.  Here, respondents have not presented sufficient evidence of petitioner's alleged noncooperation with ICE's efforts to remove him to Mexico.  (See ECF Nos. 8, 8-1.)  Although the record indicates that petitioner declined to sign several immigration forms, respondents have not put forth any evidence of petitioner's alleged noncooperation with identify verification, travel-document processing, or other required steps that would justify the government's extension of the § 1231(a)(1)(C) removal period and defeat petitioner's claim.  (See ECF No. 8-1 at 51, 53-56.)  The deportation officer's declaration states that petitioner has refused to accept removal to Mexico.  (ECF No. 8-1 at 2.)  However, petitioner's refusal to consent to his removal to a third country does not amount to affirmative misrepresentation or refusal to apply for travel documents that would defeat petitioner's Zadvydas claim.  See, e.g., Pelich v. I.N.S., 329 F.3d 1057, 1059 (9th Cir. 2003) (petitioner refused to fill out a passport application and provided conflicting biographical information); Lema v. I.N.S., 341 F.3d 853, 856-57 (9th Cir. 2003) (petitioner refused to cooperate honestly with officials to secure travel documents from a foreign government).  Therefore, the Court rejects respondents' argument that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1231(a)(1)(C).

Petitioner argues that his re-detention and his continued detention violate his right to due process.  (ECF No. 1 at 6-7.)  Because these claims require examination of whether the government followed its own regulations that set out procedures in revoking release, procedures that protect important due process rights, the Court discusses these claims together.  See Vu v. Noem, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove

4

a noncitizen within 90 days, which is referred to as the "removal period."  8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the following:  (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  During the removal period, the noncitizen shall be detained.  8 U.S.C. § 1231(a)(2).  If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions.  8 U.S.C. § 1231(a)(3).

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed.  A noncitizen who has been released under an Order of Supervision "who violates any of the conditions of release may be returned to custody . . . and may be continued in detention for an additional six months in order to affect the [noncitizen's] removal, if possible[.]"  8 C.F.R. § 241.13(i)(1).  A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).

Based on petitioner's prior release on an Order of Supervision and his re-detention in January 2026, the Court finds the burden-shifting framework from Zadvydas does not apply to petitioner's challenge to his re-detention.  Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal.  Zadvydas, 533 U.S. at 701.  In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing."  Id.  As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas."  Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025).  As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently

released on an [order of supervision]." Nguyen, 788 F. Supp. 3d at 149. "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). In the instant case, it is clear that petitioner was previously detained, released on an Order of Supervision on August 17, 2015, and has been re-detained since January 16, 2026 well beyond the expiration of the 90-day removal period. (ECF No. 1 at 2.) Therefore, respondents bear the burden of demonstrating that there is a significant likelihood that petitioner may be removed pursuant to 8 C.F.R. § 241.13(i)(2) in order to justify his detention.

Here, the immigration judge ordered petitioner removed to Cuba. (ECF No. 8-1 at 45.) Respondents make no attempt to demonstrate that petitioner's removal to Cuba is likely in the reasonably foreseeable future and concede that removal to Cuba "is not possible because that country has denied repatriation." (ECF No. 8 at 1.) Instead, respondents assert that petitioner is subject to removal to the third country of Mexico. (Id. at 2.)

Respondents contend that petitioner could be removed to Mexico "within three to four days" of his cooperation and that travel documents are not required to facilitate petitioner's removal to Mexico as a Cuban national because Mexico is part of the Electronic Nationality Verification program. (ECF No. 8-1 at 2.) However, respondents have not identified any specific steps taken with the Mexican government to arrange for petitioner's removal to that country in the nearly seven months since immigration officials re-detained him and informed him of their intention to remove him to Mexico. (See ECF No. 8; ECF No. 8-1 at 53.) Respondents further assert that "Mexico accepts certain foreign nationals for removal operations, including thousands of Cuban removals in recent fiscal years[.]" (ECF No. 8 at 4.) Yet the successful third country removal of other Cuban nationals to Mexico is not sufficient to demonstrate that petitioner specifically is likely to be removed to Mexico. See Arenado-Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [petitioner] any time soon."). Accordingly, the Court finds the government has not

met its burden of demonstrating that there is a significant likelihood of petitioner's removal to Mexico in the reasonably foreseeable future.

Petitioner was re-detained on January 16, 2026, and has been detained for nearly seven months without removal.  Based on the current record, the Court concludes that petitioner's removal is not reasonably foreseeable and the petition should be granted.  See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (remedy is release upon a finding that removal was not reasonably foreseeable).

### C.    Petitioner's Other Claims for Relief

Because the Court recommends granting the petition based on respondents' failure to establish a reasonable likelihood of removal in the reasonably foreseeable future, the Court need not address additional claims raised in the petition.  See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

### D.    Remedy

Based on the recommendation that the petition be granted, this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy.  See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante litem is "the last uncontested status which preceded the pending controversy").  Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under the August 17, 2015 Order of Supervision before his re-detention on January 16, 2026.

### E.    Motion to Expedite Ruling

On July 26, 2026, petitioner filed a notice of ripeness and motion to expedite the ruling on the merits of his petition.  (ECF No. 11.)  This motion is denied as moot because the instant findings and recommendations address the merits of the petition.

## V.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for expedited ruling (ECF No. 11) is denied as moot.

Further, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Petitioner Yacel Leonardo Ramos (A-074-287-032) be immediately released from ICE custody under the same conditions he was previously released in his August 17, 2015 Order of Supervision. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release. Respondents be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures.

3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 7, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/ramo4670.2241.imm/9